## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| **JESSE C. GARMON,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 3:21-CV-27-MAB** |
| | ) | |
| **DONALD DUNN, DAVID STOCK,** | ) | |
| **JEFFREY DENNISON, JULIE TANNER,** | ) | |
| **DEBORAH ZELASKO,** | ) | |
| **DEBBIE MAGNUS, DAN LYNN,** | ) | |
| **SUSAN WALKER, KENDRA SEIP,** | ) | |
| **HARRY ALLARD,** | ) | |
| **STEPHANIE WAGGONER, and** | ) | |
| **VERA ROLLINS,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM AND ORDER

**BEATTY, Magistrate Judge:**

Plaintiff Jesse Garmon filed this lawsuit in January 2021 pursuant to 42 U.S.C. § 1983 seeking compensatory damages for his allegedly unlawful incarceration in the Illinois Department of Corrections after the Prisoner Review Board revoked his supervised release. This matter is currently before the Court on the motion for summary judgment filed by all Defendants (Doc. 146). Having reviewed the parties' briefs, the previous Orders of the Court, and the relevant case law, the undersigned finds the threshold issue of whether Plaintiff's claims must be dismissed because they are barred by *Heck v. Humphrey* should be decided first, before addressing Defendants' motion for summary judgment on the merits of Plaintiff's claims.

## Background[1]

In October 2012, Plaintiff was sentenced in Fulton County, Illinois to six years imprisonment for aggravated domestic battery, to be followed by a four-year term of Mandatory Supervised Release ("MSR") (Doc. 146-1). Then on August 18, 2015, the Fulton County court reduced Plaintiff's sentence to three years and six months, with four years MSR (Doc. 41, p. 19).[2] The IDOC recalculated Plaintiff's sentence and changed his out date to June 26, 2015 (Doc. 41, p. 20), which had already passed, meaning Plaintiff was eligible for immediate release. Plaintiff was scheduled for immediate release on August 21, 2015 (*Id.*), and was in fact released from Big Muddy River Correctional Center that day (Doc. 146-2, para. 10). Plaintiff claims that the excess time he served left him with a "floating sentence credit" of two months and nine days that could be credited against any future sentence imposed for violating the supervised released

On October 8, 2015—less than two months after being released from prison—Plaintiff was arrested, in Sangamon County, Illinois for domestic battery (Doc. 41, p. 22). The following day, the IDOC issued a Parole Violation Report and a warrant for Plaintiff's arrest (*Id.*; Doc. 146-2, p. 2).[3] After pleading guilty to a charge of disorderly conduct in Sangamon County (*see* Doc. 41, pp. 43–44), Plaintiff was handed over to IDOC custody

---

[1] The facts stated in this section are taken from the admissible evidence submitted by Defendants at summary judgment, as well as the sworn allegations contained in Plaintiff's second amended complaint and the documents attached thereto.

[2] Neither party provided any information as to *why* Plaintiff's sentence was reduced.

[3] While there is a distinction between the terms "parole" and "mandatory supervised release," *see People v. Lee*, 979 N.E.2d 992, 1000-01 (Ill. App. Ct. 4th Dist. 2012), those terms are used synonymously and interchangeably throughout the record in this case to describe Plaintiff's status.

on December 4, 2015, to await an appearance in front of the Prisoner Review Board ("PRB") on the supervised release violation (Doc. 146-2, para. 11).

It is undisputed that on March 2, 2016, the PRB found Plaintiff had violated his supervised release as of October 8, 2015, by committing a criminal offense in Sangamon County (Doc. 41, p. 9 (Second Am. Comp.); Doc. 146, p. 3 (Defs.' MSJ); Doc. 146-2, p. 6 (PRB Order)). Plaintiff claims that he met with Donald Dunn, a member of the PRB, on March 2, 2016, and that Mr. Dunn decided Plaintiff should be reinstated to supervised release with some minimal modifications to the conditions (Doc. 41, 9–10). Plaintiff claims that he even signed papers agreeing to the new conditions (*Id.*). However, it is undisputed that the Order issued by the PRB revoked Plaintiff's supervised release and required him to serve the remainder of his four-year MSR term in prison (Doc. 41, p. 9 (Second Am. Comp.); Doc. 146, p. 3 (Defs.' MSJ); Doc. 146-2, p. 6 (PRB Order)).

In the days that followed his meeting with the PRB, Plaintiff began corresponding with various counselors at Centralia, about Dunn's reinstatement order; those communications suggested that Plaintiff would be released to a halfway house (Doc. 41, pp. 10, 14; *see also id* at p. 24). Plaintiff was also told that his discharge date, meaning "the day that [the IDOC] will have to let you go whether you have a place or not," was September 19, 2016 (Doc. 41, p. 25). On March 8, 2016, he received a message that his discharge date had changed and was actually September 14, 2017 (Doc. 41, pp. 10, 28; *see also id.* at pp. 27). He was soon informed that his release date was recalculated yet again to January 22, 2019, because he had been ordered to serve 85% of his sentence. (Doc. 41, pp. 10, 29–31; *see also* Doc. 146-2, p. 2). He continued to ask Centralia officials why he was

still incarcerated and had not been released as ordered, as well as why his discharge date kept changing (Doc. 41, pp. 10, 23, 33). At some point, he also started asking why he was not receiving credit for the two months and nine days of excess time that he had served on his original sentence, but his requests were repeatedly denied (Doc. 41, pp. 7, 11, 12; *see also id.* at pp. 32, 60–68).

Plaintiff was transferred to Shawnee Correctional Center sometime in late May or early June 2016 (*see* Doc. 41, pp. 67–72). He claims that he immediately began contacting staff at Shawnee asking for his sentence to be properly calculated to reflect the two months and nine days of credit that he thought he was entitled to, but again his requests were refused (Doc. 41, pp. 12–13, 14; *see also id.* at pp. 34–37, 70–72). Plaintiff was discharged on January 22, 2019, (Doc. 146-2, p. 3), which he claims was over two months after the date that he *should* have been released.

In this lawsuit, Plaintiff alleges that Defendants, all of whom were officials at Centralia or Shawnee, had no authority to keep him in prison after his PRB hearing because Donald Dunn ordered that his supervised release be reinstated (Doc. 41, p. 15). Plaintiff further alleges that Defendants miscalculated his revocation sentence by refusing to give him credit for excess time he served on his original sentence (Doc. 41, p. 15). Plaintiff was permitted to proceed on claims that Defendants' refusal to release Plaintiff from custody following the PRB hearing and/or miscalculating his revocation sentence violated his federal and state due process rights and his Eighth Amendment rights to be free from cruel and unusual punishment (Docs. 23, 62). He is seeking monetary damages for his "unlawful incarceration" (Doc. 41, p. 16).

After all the Defendants appeared and filed their answers, this action was reassigned to the undersigned in March 2023 upon the full consent of all parties (Doc. 128). Defendants filed their motion for summary judgment on the merits of Plaintiff's claims on July 29, 2024, arguing that they are entitled to judgment as a matter of law because there is no evidence that the Prisoner Review Board ever ordered Plaintiff to be released from prison and reinstated on supervised release, like he contends, and because his revocation sentence was properly calculated (Doc. 146, pp. 4–6). Plaintiff filed a response in opposition on September 12, 2024, primarily arguing that he should have received credit on his revocation sentence for the excess time he spent in custody on his original sentence from June 26, 2015, to August 21, 2015 (Doc. 152). Defendants did not file a reply brief.

## DISCUSSION

A glaring threshold issue that the jumps out to Court from the facts of this case and which it must address first, before considering the Defendants' motion for summary judgment, is whether the Supreme Court's decision in *Heck v. Humphrey* forecloses Plaintiff from bringing this action under § 1983. Although neither party has raised this point, this is an issue the Court can raise *sua sponte*.[4]  And in this instance, given the facts of this case, the Court believes it is appropriate to do so.

The Supreme Court has made clear that "[c]hallenges to the validity of any confinement or to particulars affecting its duration are the province of habeas corpus . . .

---

[4] A court is permitted to raise *Heck* sua sponte. *See, e.g., Knowlin v. Thompson*, 207 F.3d 907 (7th Cir. 2000) (affirming sua sponte dismissal of claim as *Heck* barred).

." *Muhammad v. Close*, 540 U.S. 749, 750 (2004) (citing *Preiser v. Rodriguez*, 411 U.S. 475, 500 (1973)). *Accord Williams v. Wisconsin*, 336 F.3d 576, 579 (7th Cir. 2003) ("Challenges to conditions of confinement (such as pollution in the prison or deliberate indifference to serious medical needs) fall under § 1983" while "[a]ttacks on the fact or duration of the confinement come under § 2254.") Precedent requires that "state prisoners use only habeas corpus (or similar state) remedies when they seek to invalidate the [fact or] duration of their confinement—either *directly* through an injunction compelling speedier release or *indirectly* through a judicial determination that necessarily implies the unlawfulness of the State's custody." *Wilkinson v. Dotson*, 544 U.S. 74, 81 (2005) (emphasis in original). Accordingly, a state prisoner is barred from bringing a § 1983 action for money damages where success on the claims would necessarily imply the invalidity of his confinement or its duration unless and until the conviction or sentence at issue has been invalidated in a federal habeas proceeding or other similar proceedings in state court. *Heck v. Humphrey*, 512 U.S. 477, 486–87 (1994). *Accord Wilkinson*, 544 U.S. at 81–82 ("[A] state prisoner's § 1983 action is barred (absent prior invalidation)—no matter the relief sought (damages or equitable relief), no matter the target of the prisoner's suit (state conduct leading to conviction or internal prison proceedings)—*if* success in that action would necessarily demonstrate the invalidity of confinement or its duration.") (emphasis and alterations in original).

The *Heck* doctrine extends to challenges of parole revocations, *Easterling v. Siarnicki*, 435 Fed. App'x. 524, 526 (7th Cir. 2011) (citing *Wilkinson v. Dotson*, 544 U.S. 74, 81–82 (2005)), and applies even when a plaintiff has been released from custody and can

no longer utilize habeas proceedings to invalidate the revocation, *see Savory v. Cannon*, 947 F.3d 409, 419-28 (7th Cir. 2020).

Here, part of Plaintiff's claim is that, as a result of Defendants' alleged misconduct, he was held in prison when he should have been reinstated to supervised release. The other part of Plaintiff's claim is that, as a result of Defendants' alleged misconduct, he was deprived of credit to which he was entitled for time already served. In other words, Plaintiff's claims are based on the premise that he was unlawfully held for too long in prison on the supervised release revocation. He is challenging the legality of the fact or duration of his physical custody, and success on the merits of his claims would necessarily impugn the validity of his confinement. *See Clemente v. Allen*, 120 F.3d 703, 705 (7th Cir. 1997) (holding plaintiff's civil rights suit challenging the BOP's computation of his sentence was *Heck* barred; success on his claim "would imply the invalidity of his sentence because he is challenging the duration of his confinement."); *Easterling*, 435 Fed. App'x. at 526 (holding plaintiff's civil rights suit alleging prison officials unlawfully detained him rather than releasing him on supervision was *Heck* barred; success on his claim "would necessarily imply the invalidity of his revoked supervised release").

Plaintiff has not alleged, nor shown in the documents he submitted at summary judgment or with his various complaints, that he previously succeeded in having the revocation of his supervised release or the computation of the revocation sentence declared invalid through state court proceedings or a federal habeas proceeding under § 2254 (*see* Doc. 1, Doc. 20, Doc. 41, Doc. 152). Consequently, it appears that Plaintiff's claims are barred by *Heck* and should be dismissed without prejudice. However, in an

abundance of caution and in the interest of fairness to Plaintiff, he will be given 30 days to respond to this Order and demonstrate that the revocation of his supervised release or the computation of the revocation sentence was, in fact, declared invalid, or in the alternative, to explain why *Heck* does not apply in this instance.

### C<small>ONCLUSION</small>

`        The Court declines to decide Defendants' summary judgment motion in light of the possibility that Plaintiff's claims are *Heck* barred. The motion for summary judgment (Doc. 146) is **DENIED without prejudice** to refiling, if appropriate.

Plaintiff shall have until September 26, 2025, to respond to this Order and explain why his claims should not be dismissed as *Heck* barred. Defendants reply, if any, is due 30 days thereafter. Both parties' briefs are limited to 10 pages. Plaintiff's failure to file a brief will be construed as an admission that has never challenged the lawfulness of his confinement through the proper means and result in the summary dismissal of this action.

**IT IS SO ORDERED.**

**DATED: August 27, 2025**

s/ Mark A. Beatty
**MARK A. BEATTY**
**United States Magistrate Judge**